UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERIC L. CLANTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:15-cv-01120-TWP-DKL |
| | ) |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff Eric L. Clanton ("Clanton") requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner"), denying his applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), and Supplemental Security Income ("SSI") under Title XVI of the Act.[1] For the following reasons, the Court **AFFIRMS** the decision of the Commissioner.

### I.   BACKGROUND

**A.   Procedural History**

On March 8, 2012, Clanton protectively filed applications for DIB and SSI, alleging a disability onset date of August 4, 2010, due to coronary artery disease, hypertension, cellulitis, lower back pain, ankle pain, and obesity. His claims were initially denied on August 30, 2012, and again on reconsideration. Clanton timely filed a written request for a hearing and on March 24, 2014, a hearing was held before Administrative Law Judge John H. Metz (the "ALJ"). Clanton

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

was present and represented by counsel. A medical expert, Robert B. Sklaroff, M.D. ("Dr. Sklaroff"), and a vocational expert, Deborah A. Dutton-Lambert (the "VE"), testified at the hearing. On April 11, 2014, the ALJ denied Clanton's applications for DIB and SSI. Following this decision, Clanton requested review by the Appeals Council. On June 18, 2015, the Appeals Council denied Clanton's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. On July 17, 2015, Clanton filed this action for judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**B.      Factual Background**

At the time of his alleged disability onset date, Clanton was fifty years old, and he was fifty-four years old at the time of the ALJ's decision. Clanton has a high school education. Prior to the onset of his alleged disability, Clanton had been employed as a parts control inspector for a medical supply company for fifteen years from 1995 to 2010. He stopped working in August 2010 as a parts control inspector because of his eighteen-month incarceration for a driving offense. He alleges that his disability began in August 2010. Clanton is 6'2" and at the time of his hearing weighed 262 pounds.

In 2001, Clanton was diagnosed with coronary artery disease, and he required placement of a stent because of an occluded left anterior descending artery. In 2008, Clanton required a second stent because of a right coronary artery blockage. ([Filing No. 12-7 at 9](Filing No. 12-7 at 9).) However, after those procedures, Clanton was not fully compliant with his medication regimen.

In April 2012, Clanton went to the hospital emergency room because he was experiencing chest pain. Clanton reported that the chest pain had been intermittent for two weeks. The pain would last for only a few moments and would come on either by exertion or when at rest. He developed leg swelling a couple of days before going to the hospital. Clanton complained of

shortness of breath and chest pains after walking two to three blocks.  Clanton admitted to the medical professionals that he had not been taking his medications for several months because he had run out of them and had no insurance or money to refill the prescriptions.  He had chest x-rays, an EKG, and an ECG performed. The chest x-ray indicated no acute cardiopulmonary disease, and everything was within normal limits.  The EKG was within normal limits also.  The ECG revealed normal left ventricular ejection fraction of 65%.  When Clanton was discharged from the hospital, he was directed to continue taking his medications and to begin a "heart healthy" diet.  ([Filing No. 12-7 at 7](Filing No. 12-7 at 7)–11.)

During his time at the hospital, Clanton underwent a Lexiscan Stress ECG, which revealed normal blood pressure responses, no chest discomfort with stress testing, and no fixed or reversible perfusion defects. *Id.* at 12–14.  Clanton was diagnosed with angina and given nitroglycerin while he was in the hospital.  The nitroglycerin was effective.  He also had uncontrolled blood pressure when he entered the hospital, but it was improved on medication.  *Id.* at 14.

Clanton underwent a consultative medical examination on June 27, 2012, as part of the disability process.  Clanton was examined by Andrew J. Sonderman, M.D. ("Dr. Sonderman").  Clanton explained to Dr. Sonderman that he was seeking disability benefits because of his coronary artery disease and chronic low back pain.  He explained that he had stents placed in 2001 and 2008 and that he was taking nitroglycerin for his occasional chest pain.  Dr. Sonderman noted that Clanton had some swelling in his legs.  ([Filing No. 12-7 at 47](Filing No. 12-7 at 47).)

Clanton reported to Dr. Sonderman that he had been experiencing chronic low back pain for approximately twenty years. Twenty years earlier, Clanton suffered a gunshot wound to the back, and the bullet lodged near his spinal cord.  He underwent surgery to have the bullet removed, but he suffered paralysis from the waist down for about three months.  Clanton spent six to seven

3

months in rehabilitation to learn how to walk again. He reported pain in his lower back that radiated down his right leg, which was aggravated by bending and lifting. He explained that he did not experience numbness in his leg. Clanton was taking Vicodin and Aleve to manage the pain. *Id.*

Clanton reported to Dr. Sonderman that he was able to "open a jar, pick up a coin off of the table, tie his shoes, button and zip his clothing, dress and undress himself, bathe himself, push a full grocery cart, pull, sweep, mop, and write clearly." ([Filing No. 12-7 at 48](#).) Clanton also reported being able to walk for thirty minutes before needing to rest, stand for twenty minutes at a time, stand for three hours total in a work day, and sit for seven hours total in a work day. Clanton reported that he could lift twenty pounds with either arm. *Id.* at 47.

During the examination, Clanton denied any heart murmurs, palpitations, syncope, or shortness of breath. Dr. Sonderman noted that Clanton was stable at station and comfortable in the seated and supine positions. On examination, Dr. Sonderman found that Clanton had normal musculoskeletal functioning and a negative bilateral straight leg raise test. A review of the peripheral vascular system revealed 1+ pretibial pitting edema. Dr. Sonderman noted that Clanton walked with a limp because of decreased range of motion in his right ankle. Clanton could stand on his left leg alone but not on his right leg. He could walk on his heels and walk on his left toes but not on his right toes. All other systems and functioning were normal. *Id.* at 48–50.

Clanton sought medical treatment for cellulitis from July through December 2012. His condition was described as an open wound on his right leg, and he was referred to receive physical therapy. His progress notes showed that the wound was treated with antibiotic ointment and compression wrapping. After thirteen visits to physical therapy, Clanton's wound was healed by December 20, 2012, and by January 2013, he was discharged from further services. His discharge

summary showed that he was given compression garments. (Filing No. 12-7 at 64–65, 78–80; Filing No. 12-8 at 16.)

A Social Security medical consultant completed a residual functional capacity assessment in August 2012 and determined that Clanton could lift and carry ten pounds occasionally and less than ten pounds frequently. He could stand and walk at least two hours in an eight hour work day and could sit about six hours in an eight hour workday. The medical consultant noted a July 2012 x-ray of Clanton's lumbar spine that revealed degenerative disc disease at L2-3 and L4-5 and only mild spondylosis. The medical consultant also opined that Clanton could frequently balance; occasionally climb ramps or stairs, stoop, kneel, crouch, and crawl; and should never climb ladders, ropes, or scaffolds. It was opined that Clanton should avoid concentrated exposure to extreme heat and cold, fumes, odors, gasses, dusts, poor ventilation, and hazards such as machinery and heights. The medical consultant also noted that Clanton was noncompliant with his medications, and Clanton reported that he could mow the grass. (Filing No. 12-7 at 66–73.)

During a medication check and follow-up examination in October 2012, Clanton's blood pressure was slightly evaluated; however, he had no edema in his lower extremities. (Filing No. 12-7 at 81–82.) An ECG showed normal blood pressure responses and no chest discomfort with stress testing. *Id.* at 82. In February 2013, Clanton returned for a follow-up cardiac appointment at the clinic and reported that he was doing well and not experiencing any cardiac symptoms. He reported that he was walking three to four blocks without any symptoms. His ECG results were again within normal limits. (Filing No. 12-8 at 11–12.) At his six-month follow-up appointment in August 2013, Clanton reported that he was doing very well and had no complaints. He had only occasional chest pain, but it was not severe and did not last very long. He could walk about four

to six blocks without any chest pain or shortness of breath. He reported shortness of breath with heavy exertion. His ECG results were again within normal limits. *Id.* at 12–13.

In January 2014, Clanton went to the emergency department for recurrent sub-sternal chest pain. An initial EKG and chest x-rays did not reveal signs consistent with an acute heart attack, but subsequent EKGs showed development of anterior Q-waves. Because of ongoing chest pain and increasing cardiac markers from abnormal EKGs and ECGs, Clanton was sent for emergent cardiac catheterization, which showed 100% blockage of the mid left anterior descending artery stent. It was determined that Clanton had suffered an acute heart attack. Clanton underwent thrombectomy and balloon angioplasty to restore the blocked stent. He recovered well following the procedure and had an uncomplicated hospital stay for four days in total. (Filing No. 12-9 at 3–7.)

At his follow-up appointment on February 10, 2014, Clanton reported that he was taking his medications and was not having any chest pain or other symptoms. He noted that he was doing okay. Cardiac testing was normal, and a chest examination was normal. Clanton's lower extremities showed no edema. In addition to his prescription medications, Clanton's treatment recommendations included diet changes, weight loss, and regular exercise. (Filing No. 12-8 at 13–14.)

Approximately one month later on March 24, 2014, at the administrative hearing before the ALJ, Clanton testified that he was experiencing moderate pain in his right leg but that he had not taken any medication. He testified that if he had taken his medication the pain would have been reduced. He testified that he was seeing his primary care physician for his back and leg pain. Clanton asserted that he is unable to work due to the pain in his right leg and chest, which leads to

shortness of breath and loss of balance. Additionally, Clanton stated he is unable to perform his previous employment as a parts control inspector due to hand cramps.

Clanton testified that he could stand for approximately ten to twenty minutes before his hips and legs would bother him. He stated that he could walk a block with or without a cane, but without his cane he loses his balance. Clanton testified that he can lift twenty pounds or less and does not have difficulty using his fingers to pick up small items.

When asked about his daily activities, Clanton testified that he was able to take care of his own personal hygiene without help. He wears a compression stocking to help with leg swelling, and when needed, he elevates his legs. He spends most of his time watching television and movies. Clanton also testified that he listens to music, reads, and does word search puzzles. Clanton explained that he goes grocery shopping once every two weeks and can push around the grocery cart. He explained that he attends church services once a week for about an hour and a half. Clanton further testified he has the ability to do household chores such as laundry, dusting, vacuuming, cleaning dishes, and mopping. He also can cook his own meals. He also testified that he smokes a half pack of cigarettes per day for the past twenty years.

During the administrative hearing before the ALJ, Dr. Sklaroff testified about Clanton's medical history, conditions, and treatment as well as offering an opinion on Clanton's hearing testimony. Dr. Sklaroff testified about Clanton's physical residual functional capacity. Dr. Sklaroff acknowledged the diagnoses of coronary artery disease, hyperlipidemia, hypertension, cellulitis, and an old gunshot wound to his back. Dr. Sklaroff also acknowledged that Clanton was obese but that he had an ejection fraction of 61%, indicating no heart failure and also no listing-level impairments.

Dr. Sklaroff opined that Clanton had a residual functional capacity to sit, stand, and walk each up to six hours during a typical eight-hour work day with normal breaks, and he could lift up to twenty pounds occasionally and ten pounds frequently. He opined that there was no need for postural limitations or limitations with the hands and feet. Dr. Sklaroff further opined that if problems arose with edema, Clanton could put on his compression stockings. Dr. Sklaroff testified that wearing a compression stocking would be much more effective in reducing swelling caused by edema or cellulitis than elevating the leg.

Dr. Sklaroff acknowledged Clanton's recent acute heart attack in January 2014, but he testified that it occurred because Clanton needed the stents. Dr. Sklaroff testified that after the stent was repaired, Clanton responded well and had no chest pain, heart failure, or abnormal heart rhythm. Therefore, he saw no reason for restrictions based on the recent incident that had been resolved. Dr. Sklaroff reviewed the residual functional capacity assessment that had been completed by a Social Security medical consultant in August 2012, and he testified that he saw no reason for limiting Clanton to lifting no more than ten pounds and walking or standing only two hours.

The VE testified at the administrative hearing about Clanton's past relevant work, which she identified as an inspector of surgical instruments according to the *Dictionary of Occupational Titles* (the "DOT"). The VE testified that Clanton's work as a parts control inspector was light both as he performed it and also as it is classified in the DOT.

The ALJ presented to the VE a hypothetical individual with the restrictions that Dr. Sklaroff set out for Clanton. The VE testified that such a hypothetical person could perform Clanton's past work as a parts control inspector both as it is typically performed and as Clanton actually performed it. She further testified that if the hypothetical individual needed to use a cane,

they could still perform work at the light level. The VE then identified other unskilled, light jobs that could be performed: cashier, merchandise marker, and ticket taker.

## II. DISABILITY AND STANDARD OF REVIEW

Under the Act, a claimant may be entitled to DIB or SSI only after he establishes that he is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that meets the durational requirement, he is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the

fourth and fifth steps.  Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite his mental and physical limitations."  *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p).  At step four, if the claimant is able to perform his past relevant work, he is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).  At the fifth and final step, it must be determined whether the claimant can perform any other work in the relevant economy, given his RFC and considering his age, education, and past work experience.  20 C.F.R. § 404.1520(a)(4)(v).  The claimant is not disabled if he can perform any other work in the relevant economy.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step.  *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

Section 405(g) of the Act gives the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred.  *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).  "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*  Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008).  While the court reviews the ALJ's decision deferentially, the court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because

of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

The ALJ first determined that Clanton met the insured status requirement of the Act through December 31, 2015. The ALJ then began the five-step analysis. At step one, the ALJ found that Clanton had not engaged in substantial gainful activity since August 4, 2010, the alleged disability onset date. At step two, the ALJ found that Clanton had the following severe impairments: obesity, coronary artery disease, hypertension, cellulitis, low back pain, and ankle pain. At step three, the ALJ concluded that Clanton does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ then determined that Clanton had an RFC to perform light work "except he can sit, stand, and walk each for 6 hours in an 8-hour day." (Filing No. 12-2 at 21.) At step four, the ALJ determined that Clanton was capable of performing his past relevant work as a parts control inspector. The ALJ still went on to determine at step five that Clanton was not disabled through the date of the decision because there were jobs that existed in significant numbers in the national economy that Clanton could perform, considering his age, education, past work experience, and

RFC. Therefore, the ALJ denied Clanton's applications for SSI and DIB because he was not disabled.

## IV.   DISCUSSION

In his request for judicial review, Clanton asserts two reasons for remand. First, he alleges the ALJ erroneously concluded that he is capable of light work while at the same time recognizing his need for six hours of seated work because of his impairments. Second, Clanton alleges the ALJ failed to acknowledge and discuss the reasons for his lack of treatment for leg and back pain. The Court will address each of these arguments in turn.

### A.   **The ALJ properly determined that Clanton could perform light work.**

Clanton alleges that the ALJ should have found that he could only perform sedentary work since the ALJ found that "[b]ecause he is obese and does have degenerative disc disease, I increased his sitting to six hours in the workday." (Filing No. 12-2 at 23.) Clanton argues that the ALJ made this sitting accommodation in the RFC because of Clanton's leg symptoms and heart condition. He asserts that the ALJ's assessment of his severe impairments is at odds with the ultimate finding of not disabled and a capability to perform light work. Clanton argues that the ALJ did not explain his RFC finding in his opinion, and the ALJ gave an incomplete and illogical analysis in his determination. Clanton argues that based on the ALJ's determination to "increase his sitting to six hours," the ALJ was required to conclude that Clanton was capable of only sedentary work because light work requires standing or walking for at least six hours. Based on a sedentary work level, Clanton asserts he had to be determined disabled based on the Medical-Vocational Guidelines.

In response to Clanton's argument, the Commissioner asserts there is substantial evidence in the record to support the ALJ's RFC determination. The Commissioner points out that the ALJ

12

explained he was giving great weight to Dr. Sklaroff's opinion "because he is specialized in the evaluation of Social Security disability claims, . . . he is unbiased with no intent to mislead, . . . and [h]e had the opportunity to review a complete record, hear the claimant's testimony and provide adequate explanation in support of his opinion." ([Filing No. 12-2 at 24](Filing No. 12-2 at 24).)  Dr. Sklaroff opined that Clanton could perform light work.  When Clanton's attorney specifically asked Dr. Sklaroff about the residual functional capacity assessment that indicated some criteria of sedentary work might be appropriate, Dr. Sklaroff unequivocally rejected that suggestion, noting there was no reason for such limitations.  The ALJ explicitly gave great weight to Dr. Sklaroff's opinion (which was an opinion of light work limitations) and explained why he gave the opinion great weight.  The Commissioner asserts that because the ALJ explained the reasons for his conclusions, he built a logical bridge and connected all the dots, and the ALJ's decision should be upheld as it is supported by substantial evidence.

The Commissioner further explains that Clanton's argument—a limitation of sitting for six hours necessitates a finding of sedentary work—is not correct because the ALJ also found that he could stand and walk for six hours in an eight-hour work day, and Clanton testified that he could lift and carry twenty pounds occasionally.  With these additional criteria, light work was the appropriate designation.

> The Code of Federal Regulations defines sedentary work as,
>
> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  In contrast to sedentary work, light work is defined as,

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job

13

    is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

Upon review of the ALJ's decision and the record, the Court finds that the ALJ reasonably articulated the reasons for his determination that Clanton could perform light work, and that determination was supported by substantial evidence. Dr. Sklaroff opined that Clanton could perform light work. Clanton himself testified that he could lift twenty pounds, and he asserted that his heart doctor told him not to lift more than twenty pounds. The ALJ determined that Clanton could walk, stand, or sit each for six hours in a work day. These facts fall under the category of light work as defined in 20 C.F.R. § 404.1567(b). The ALJ's decision was appropriate, reasonable, and supported. Thus, Clanton's argument for remand on this basis is unavailing.

**B.**     **The ALJ adequately considered Clanton's lack of treatment for back and ankle pain.**

Clanton next argues that the ALJ erred by not properly considering his reasons for his failure to pursue treatment for back and right ankle pain. The ALJ used this lack of treatment to discount the severity of the symptoms, and Clanton asserts that the ALJ erroneously failed to account for his lack of insurance and money to be able to afford taking prescription medication. Clanton asserts that the ALJ should have considered whether there was good cause for his failure to pursue treatment, which was the result of a lack of funds and insurance. Clanton asserts that an inability to afford prescribed treatment is commonly cited and regularly accepted. He concludes this argument by asserting that "there was no inquiry into why Clanton did or did not follow through with recommended treatment." ([Filing No. 14 at 17](Filing No. 14 at 17).)

The Commissioner responds that the ALJ followed Social Security regulations when considering the credibility of Clanton's assertions, and the credibility determination was supported

by evidence in the record.  The Commissioner explains that the extensive medical care noted in the record showed that Clanton received treatment for his chest pain, heart condition, and cellulitis.  He received physical therapy and was prescribed and took many medications.  He also had surgeries and hospital stays.  Yet during this same time, Clanton asserted that he could not afford treatment for his ankle and back pain.  This was not a credible claim when he was receiving physicians' care and taking medications for other conditions.  At one point, his treatment was interrupted by his incarceration, but he resumed treatment and started to comply with treatment plans following his release from jail.  The ALJ also considered and discussed the consultative examination that included findings regarding Clanton's back and ankle, and he also relied on the opinion of Dr. Sklaroff.

Because the ALJ is in the best position to observe witnesses, an ALJ's credibility determination will not be upset on appeal if it is supported by some record evidence and is not "patently wrong."  *Herron*, 19 F.3d at 335.  *See also Elder v. Astrue*, 529 F.3d 408, 413–14 (7th Cir. 2008) ("[i]t is only when the ALJ's determination lacks any explanation or support that we will declare it 'patently wrong'").  Additionally, the Court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *Overman*, 546 F.3d at 462.

In this case, the ALJ noted Clanton's treatment history for chest pain and cellulitis that occurred during the same time period when he was allegedly suffering from back and ankle pain.  Contrary to Clanton's assertion that "there was no inquiry into why Clanton did or did not follow through with recommended treatment," the ALJ did specifically ask Clanton during the administrative hearing why he failed to take his medication, and Clanton explained that he could not afford the medication for a brief time.  (Filing No. 12-2 at 66–67.)

The ALJ noted that Clanton "received virtually no treatment for musculoskeletal symptoms," and he "does not report chronic symptoms to his treating physicians. In fact, the claimant has not reported any limitations to a treating source regarding his back or lower extremity." (Filing No. 12-2 at 22.) The ALJ also noted that there was no "diagnostic workup" for Clanton's back and ankle. *Id.* at 23. After reviewing the evidence and listening to Clanton's testimony, the ALJ recognized that Clanton did in fact meet with treating physicians and afforded treatment; however, he failed to discuss and seek medical treatment for back and ankle pain when he was meeting with his medical providers. The ALJ did not view this as an issue of a lack of funds but rather a lack of reporting certain conditions to treating physicians. Thus, the ALJ adequately considered and discussed Clanton's back and ankle pain and the lack of treatment for those symptoms. Clanton's argument for remand on this basis is unsuccessful.

## V.   CONCLUSION

For the reasons set forth above, the final decision of the Commissioner is **AFFIRMED.** Clanton's appeal is **DISMISSED**.

SO ORDERED.

Date: 9/28/2016

*[signature]*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov